We'll begin with the first case to be argued, Uddo v. DeLuca. I'm sorry, may I proceed, Your Honor? This is Judd Spray from the law office of Judd R. Spray, representing appellants. Yes, please proceed. Thank you, Your Honors. Thank you, Your Honors. In my two minutes of uninterrupted argument, I want to say, above all, that the relationship between Mr. DeLuca, the appellant, and Mr. Uddo, the appellee, was not a fiduciary relationship, whatever else it might have been. And the relationship did not create any fiduciary duties running from Mr. DeLuca to his uncle by marriage, Mr. Uddo. In fact, the relationship doesn't even remotely resemble the kind of fiduciary relationships that are recognized under New York law. Mr. DeLuca asked his uncle to help him access funds to expand his business. So the two of them, Mr. DeLuca and Mr. Uddo, went to Charles Schwab together, and they became co-borrowers on a five-year revolving line of credit. It is absolutely clear that co-borrowers are not fiduciaries to one another under New York law. And it is true that Mr. Uddo posted the collateral to convince Schwab to provide the line of credit. But even if that makes Mr. Uddo effectively a guarantor on the line of credit, the fact is that borrowers don't owe fiduciary duties to their guarantors either. And yet in this case, the district court held that, and I'm quoting here, in effect, Mr. Uddo trusted Mr. DeLuca with over $7 million of his own securities. That's at page 766 of the appendix, which is page 23 of the district court's opinion and order. And the district court was exactly right as a factual matter. Mr. Uddo put his stock portfolio, posted his stock portfolio as collateral, and he put it at risk. But that doesn't make this relationship a fiduciary relationship. It means that Mr. Uddo and Mr. DeLuca were co-borrowers, and Mr. Uddo was effectively a guarantor. Those are not fiduciary relationships. And this court held in United States v. Chestman, 947 F. Second 551, that a fiduciary obtains access to the beneficiary's property to serve the ends of the fiduciary relationship. And the fiduciary, therefore, is duty-bound not to appropriate the property of the beneficiary for his own use. Well, that is not even remotely what happened here. There were no ends of the fiduciary relationship for Mr. DeLuca to serve. The entire point of this transaction was to get access to funds so that Mr. DeLuca could appropriate those funds for his own use. So to reframe this as a fiduciary relationship really turns the whole concept of what it means to be a fiduciary on its head. And that's the main point I wanted to be sure to make before I run out of time or before your honors may begin asking questions. To be clear, I am focusing on Mr. Uddo's fiduciary duty claims for two reasons. First, the district court's opinion is just legally incorrect, and that's reason enough, of course, to seek to vacate the judgment on that claim. But the second reason to focus on the fiduciary duty claim is that the only claim against appellant Mrs. DeLuca, Kimberly DeLuca, was that she aided and abetted her husband's alleged breach of his alleged fiduciary duties to his uncle. So this legal question of whether Mr. DeLuca was a fiduciary to Mr. Uddo will determine entirely whether Mrs. DeLuca is going to be subject to this $5 million judgment for the rest of her life, or whether it was error, legal error and reversible error, for the district court to find that there was any fiduciary duty here in the first place. Eliven, do you have any questions? Yeah, I have a couple of questions, and one leads off of the point you just made, Mr. Spray. So you would concede that for Mr. DeLuca, for Robert DeLuca, you've got to win across the board for him, and his liability is the same for all the causes of action, correct? Yes and no, Your Honor. Yes, that is correct. In order for him not to be subject to this judgment, he needs to win across the board. That said, there is a question that has hovered over this case from the outset, which is whether this judgment will ultimately be dischargeable in bankruptcy, because I think it is essentially undisputed that the DeLucas are never going to be able to pay this $5 million judgment. That's just – that's not going to happen. They don't have the money. And so if Mr. DeLuca is held to have breached this alleged oral agreement, then I think that probably is dischargeable in bankruptcy. If he's held to have defrauded Mr. Udo or to have breached fiduciary duties to Mr. Udo, then I think that raises questions in some future bankruptcy proceeding about dischargeability. But the damages are the same for each of the causes of action, correct? Correct, Your Honor. And the damages – that is correct. And the damages assessed against Mrs. DeLuca are joint and several with Mr. DeLuca. So for her exceptionally small part in this case, and based on the allegation and the finding that she aided and abetted a breach of fiduciary duty, Mrs. DeLuca is going to owe $5 million for the rest of her life as well. And this is just a legally deficient opinion. And to be very clear, we are not – on this appeal, for purposes of this appeal, we are accepting the district court's findings of fact. We understand there was a trial. The district court was there. She – the district court heard the testimony. So we understand that it's very unlikely that this court would want to revisit the district court's factual findings. But the application of those factual findings to the law is simply wrong. I want to ask another question. I'm going to get a couple of questions in here. So New York law certainly recognizes that fiduciary duties can arise in informal relationships, right? Doesn't need to be a board and a general counsel or something like that, correct? That is correct, Your Honor. All right, and so it's generally a fact-specific inquiry, and one of the inquiries is where there is a family relationship that's relevant. It's not irrelevant, correct? It is not irrelevant to the question, no, Your Honor. And in this case, certainly the facts developed in the record are that Mr. Udo is not somebody who's in the same business as Mr. DeLuca, right? He's relying on Mr. DeLuca for his expertise with respect to commercial real estate development. Well, I don't agree with that statement, Your Honor. The first part was correct. Mr. Udo is not in the construction business. That much is true. But to say that Mr. Udo was relying on Mr. DeLuca's expertise is just simply not true. Mr. Udo was not relying on Mr. DeLuca to do anything. Mr. DeLuca came to him and said, I need money to expand my business. That's Mr. Udo's story. Again, this is accepting the facts essentially as pled by Mr. Udo and found by the district court. Mr. DeLuca went to Mr. Udo and said, I need money to expand my business. And Mr. Udo said, great, I'll try to help you get the money. Let's go to Schwab together, and we'll be co-borrowers on a line of credit, and I'll post my stock as collateral. So that was a favor that he did for his nephew by marriage, but he's not in any way relying on Mr. DeLuca. And that's the point – Let me stop you there. I want to make sure that other judges have a chance to ask some questions. Judge Gatzman, I'll defer. Judge Calabresi? Yes. I have two questions. One, your argument seems to be that this particular thing did not in itself create a fiduciary relationship. But that doesn't – the fact that New York courts say that a guarantor situation doesn't in itself create a fiduciary relationship doesn't mean that New York doesn't recognize fiduciary relationships existing apart from that. And that, I think, was the thrust of Judge Sullivan's question. There was a long-standing relationship in which Robert relied on Peter's expertise, and doesn't that fiduciary relationship in New York continue even if this particular thing was not in itself sufficient to create the relationship? That's my first question. I'll ask the second one, then you can answer both. As to Kimberly, didn't the statement that hers, that keep the loans secret from the family and other things like that, suffice? So it is a matter of fact that this court could find that she was directly involved in this situation? Well, taking your honors questions one at a time, on the first question, again, I strongly disagree with any inference or statement that Mr. Udo relied on Mr. DeLuca. That's just simply not the nature of the relationship. And what this court held in United States v. Chestman is that the beneficiary in a fiduciary relationship is depending on the fiduciary to act for his benefit. But that's not what happened here. There is no suggestion anywhere that Mr. Udo expected to get anything from Mr. DeLuca. He was not – he's simply not the beneficiary of any fiduciary relationship. May I just interject with a slightly different question? Suppose we find that your client violated the contract. Do we need in this case to say anything about whether there was a fraud or not, or can that be left to the bankruptcy court? As you said, that's what's in the background. Without saying one way or the other, bankruptcy courts are very good at deciding whether there are fiduciary relationships or not. Is that one possibility? I can't say that I have exhaustively researched that question, Your Honor, but I think the answer is if there is a judgment from the district court finding that the appellants defrauded Mr. Udo and or breached fiduciary duties to him. That might be binding, but if our court simply affirms without any decision on that – anyway, you've answered my question. Good. Thank you. Thank you, Your Honor. This is Judge Katzmann. I have a few questions, if I might. The district court didn't make any specific factual findings about the term of the oral argument between Mr. Udo and Mr. DeLuca. So even if we were to agree with your position, at least as I understand it, that the oral agreement between the two men wasn't going to last for five full years, what's your best argument that we should reverse rather than remand for additional fact-finding? Well, this issue was actually briefed in post-trial briefing before the district court, and the district court declined for whatever reason to address it. But I think there's plenty of factual – I think there's actually an undisputed factual record here that the alleged oral agreement between Mr. DeLuca and Mr. Udo was that Mr. Udo, having posted his collateral to make the Schwab line of credit a reality to make that happen, said to Mr. DeLuca, okay, now that I've done this for you, you need to make sure you pay it back. And Mr. DeLuca said, no problem, Uncle Pete, don't worry about it, I've got it covered. That's the oral agreement. That's the sum total of what this alleged oral agreement is. And the point we've made on this appeal, which I think is dispositive and actually quite simple, is what Mr. Udo, by his own admission, was supposedly promising Mr. DeLuca was that he would make the – he would continue to post his collateral to facilitate the five-year existence of this revolving line of credit. And there's no dispute about that. We've put the statement in our briefs. I can try to find the site when I get a chance. But the point is Mr. Udo said on the stand, yes, I knew this was a five-year line of credit, and that's exactly what I promised to help Mr. DeLuca achieve. And so the question under the New York Statute of Frauds is very easily answered. You can't perform a promise to make a five-year line of credit last for five years in one year, and therefore this alleged oral agreement clearly violates New York Statute of Frauds. As you say, the district court didn't make a finding, and wouldn't it be more appropriate to let the district court make that finding? Well, I guess I would take that in the alternative if we need to go back to the district court and have some kind of factual finding on what exactly this oral agreement was. But there was a whole trial on this question, and I'm looking at the district court's opinion right now. On page 16, the district court wrote, while the term of the credit line was five years, there was no obligation on the part of Mr. DeLuca to continue to utilize the line of credit for that entire period. And again, that avoids the question. That avoids the question under the Statute of Frauds, which is, yes, Mr. DeLuca could have done an infinite number of things. Mr. DeLuca might never have drawn down a cent from the line of credit. Isn't it possible that Robert could have, at a certain point within one year, closed down the line of credit because he had gotten enough money and done the deal? And if that is possible, isn't that what the district court said, that it could have closed down within a year? And since it could within a year, the New York Statute of Frauds doesn't apply. That is exactly what the district court held, Your Honor, and it is not a legally correct ruling. And the reason it's not is because, again, there is an infinite number of things that Mr. DeLuca might have done. He could have decided he didn't want to be in the construction trade anymore, and he might never have drawn down a single cent. Or he might have gone to his uncle and said, even though we have this oral agreement, allegedly, I'm releasing you from it. I don't want you to perform under it anymore. Take your money back. He could have done that, absolutely. But this court's precedent, and the New York Court of Appeals precedent on the Statute of Frauds, is that it's not enough if just one party can perform under the contract within a year. The entire contract needs to be performed within a year, or it violates the Statute of Frauds. And again, in this case, while Mr. DeLuca could have done anything he wanted, Mr. Udo couldn't. And Mr. Udo, what Mr. Udo promised to do, by his own admission, was to make this line of credit, this revolving line of credit, available to Mr. DeLuca for the next five years. And that, by definition, violates the Statute of Frauds. Thank you. Thank you. You will have two minutes for rebuttal. Mr. Wurtzel? Good morning, Your Honors. May it please the Court, Joshua Wurtzel, Schwab, Steg, Dolan. For the appellant, Peter Udo, I'd like to first tackle the primary issue that my adversary raised, which is this question of the fiduciary duty. Your Honors heard my adversary concede that under New York law, it is not required to have a formal fiduciary relationship, the type of relationship that we all think of as giving rise to a fiduciary, giving rise to fiduciary duties like a board, you know, like a trust and a trustee and so on. And Your Honors are correct when we cited the case law in our brief holding that under New York law, you don't need to have one of these inherently fiduciary relationships. The test is one of whether one party reposes trust in another. And so the appellant's argument here, while they say it is a legal argument, it is really a challenge to the district court's factual findings regarding the type of relationship that Mr. Udo and Mr. DeLuca have. The district court held in its factual findings, and I'll take my adversary at his word that they're not challenging these specific findings, and this is on A765, which is the district court's opinion. Judge Gershon held that Mr. DeLuca had considerably superior knowledge and experience in the area of land acquisition and construction, and he relied on that plus his close kinship with Mr. Udo to induce Mr. Udo to trust him and extend him the collateral for the Schwab line of credit. And then the district court further went on to say, I find that Mr. DeLuca held himself out as a real estate expert and valued his consultation services to his uncle accordingly. And then testimony further established that DeLuca helped Mr. Udo and his family on many occasions with real estate and construction use. These are factual findings that the district court made to support the conclusion that these two men shared such a close relationship. Yes, it was a familial relationship, but it was also a relationship that was built on trust. And contrary to what the DeLucas argue in their papers, the district court didn't rely solely on the fact that these two men happened to be related by marriage in holding what there was a fiduciary duty. The district court looked at all the facts that were presented in trial, considered the testimony of both Mr. Udo and Mr. DeLuca, and made these factual findings concerning the extent of the trust that they had between them. The same is true to my adversary's argument regarding the fact that co-borrowers don't have fiduciary duties to one another. What the DeLucas ignore here is that this wasn't a commercial deal. This was one family member walking into a bank, walking into Schwab with another family member and agreeing to help him get money for his business. And the reason that he did that was not because he was getting a benefit, that he was getting interest in the way that commercial co-borrowers might operate. He was doing this because they were family, because he trusted him, because Rob DeLuca, as the district court found, had actually driven Mr. Udo around the neighborhood, showing him all the properties and all the houses that he was building. And for those reasons, Your Honor, the district court's finding of a fiduciary duty here, the challenge that the DeLucas have is not a challenge to the law. It's a challenge to the factual findings that the district court made. And those factual findings are amply supported by the record. Can I ask you a question? I think that's past two minutes. This is Judge Sullivan, Mr. Wurtzel. If we were to agree with you and affirm Judge Gershon on the fiduciary duty count, is there any need for us to get to the contract and fraud claims? No, Your Honor. Does it matter? No, it doesn't want to have any impact on anything else? If this court just affirms on the fiduciary duty and says nothing else about the other claims, at least as they relate to Mr. DeLuca, then it will have no effect. All right. Then I guess another question I had is with respect to the fraud and fraud in the inducement claims. They seem pretty similar. What is the difference or the distinction between those two? Your Honor is correct. They are very similar. The difference that the district court drew was that the fraud claim was based on Mr. DeLuca's affirmative misrepresentations about how he was going to spend the money, and the fraudulent inducement claim was based on his omission of the fact that he and his wife were insolvent at the time. I don't think that those two necessarily have to be distinguished in that way, but that is the way that the district court distinguished them. I think the district court got it right in both places, and the DeLucas, by the way, don't challenge that distinction. The only argument they make on the fraudulent inducement was that there wasn't a contract that Mr. DeLuca fraudulently induced Mr. Udo to enter into, and that, of course, is contrary to the district court's factual findings that there was a contract. All right. Thank you, Judge Kasper. I'll defer. Judge Calabresi? Yeah, two questions. One, don't the New York courts say, though, that fraud in the inducement cannot be used as a way around the statute of fraud, and that they will be suspicious of fraud in the inducement? It's against an actual direct fraud where this is a way around the limitation posed by the statute of fraud. The second question is, in terms of Kimberly, is there any difference in a judgment? Were we to agree with you as to the fiduciary breach? Would she be held with respect to that as well, or only with respect to the breach of contract? So, Your Honor, I'll take the second question first. The only claim against Kimberly DeLuca is for aiding and abetting breach of fiduciary duty. So if this court affirms the district court's conclusion that there was a fiduciary duty, the DeLucas have a challenge that there wasn't evidence supporting the conclusion that Kimberly DeLuca knew of the fiduciary duty and substantially assisted in the breach, but those are just factual findings. So there's no claim for aiding and abetting breach of contract or aiding and abetting fraud against Kimberly. Abet, be clear. Good. So the first question – yes, thank you, Your Honor. The first question regarding the statute of fraud, Your Honor is right. You can't use a fraud claim to try to resurrect an improper contract claim. But here, there are actually two separate claims. The fraud is based on a misrepresentation or an omission that was collateral to the contract. And those misrepresentations and omissions are, A, Mr. DeLuca saying, I plan to use the money for my business when, in fact, he actually intended, as the district court found, to use the money for prior debt and for personal purposes. And the omission was that he and Ms. DeLuca were insolvent at the time they were taking this law, which the court held – the district court held was material. So those are collateral misrepresentations and omissions, and that's why the fraud claim and the contract claim both survived separate and apart from each other. And that's why we're not using the fraud claim to try to resurrect an improper contract claim because they are different. And then, Your Honor, on the contract claim regarding the statute of fraud, in this particular instance, what the district court held was that Mr. DeLuca had failed to satisfy his burden of proving that this was a contract that could not have been established – that could not have been completed within one year. So I think the challenge that the DeLucas have is actually backwards. They say the district court didn't find X, Y, and Z, but it was Mr. DeLuca's burden to establish that there was no way this contract could have been performed within one year. And the district court satisfied its obligation to make a factual finding on that and said Mr. DeLuca failed to establish – failed to meet his burden. And that factual finding is supported by the evidence, in particular the evidence from Mr. Udo – and this is on pages 45 to 46 of our brief – which Mr. Udo testified that it would have been possible for both of the two men, both of Mr. Udo and Mr. DeLuca, to perform within a year. This is Judge Katzman. I just want to come back to, again, to the statute of fraud issue, if we reach it. And correct me if I'm misunderstanding. It seems that your position is that Mr. Udo did not agree to keep his collateral tied up for the full five-year term of the line of credit. In other words, I take your argument to be that Mr. DeLuca and Mr. Udo had some kind of understanding that they would close the line of credit and release the collateral if Mr. DeLuca was able to pay the money back early. But the district court did not, as I read it, make a specific factual finding on this point. So even if we agree that your position is the better one, why shouldn't we still remand the case to the district court for additional fact-finding? What's your best argument that we should simply affirm? Your Honor, my best argument is that it was Mr. DeLuca's burden to prove that there was no way that this contract could have been performed within one year. And the district court looked at the evidence and held and made a factual finding that it could have been performed within one year. I recognize the district court didn't specifically say that Mr. Udo could have performed within one year versus what it did specifically say that Mr. DeLuca could have performed within one year. But by not making the finding about whether Mr. Udo could have performed within one year, that leads to the court's ultimate conclusion here, which is that Mr. DeLuca had not met his burden of proving that the oral agreement between the parties could not have been performed within one year. And I think this court can obviously affirm for any reason. So the fact that the district court didn't make this specific factual finding, the district court certainly impliedly accepted Mr. Udo's evidence, Mr. Udo's testimony on this point. And Mr. Udo's testimony on this point is what supports the district court's conclusion that Mr. DeLuca failed to meet his burden. Thank you. You have 20 seconds left. Do you have anything more you want to say? I have nothing further unless any of the judges have any further questions. Thank you. Mr. Spray, you'll have two minutes in rebuttal. Thank you, Your Honor. Very quickly, it's simply not true that we are challenging the factual findings. We're not. It is true. Mr. DeLuca knew more about building homes than Mr. Udo does, fine. We accept that as a fact. But the question is, why does that matter? If Mr. Udo had given Mr. DeLuca $7 million or $5 million or any amount of money and said, go build me a home, use your expertise to build a home and make me some money, turn a profit with this money, then maybe there would be a question here about whether there was a fiduciary duty. But that isn't what happened. At the core of this relationship, there is no reliance by Mr. Udo on Mr. DeLuca to do anything other than possibly to pay back the money. And so if Mr. Udo has some kind of contract claim, fine. Then he can try to prove the contract claim. But the fact that they borrowed money together and that Mr. Udo was dependent on Mr. DeLuca to pay the money back doesn't make that a fiduciary relationship. And again, the reason that matters is because, first of all, people, family members, co-borrow loans, co-sign for loans, guarantee loans for each other all the time. There are literally thousands of published opinions in New York jurisprudence on guarantees and borrowing and lending. And yet somehow neither the district court nor Mr. Udo nor me, frankly, none of us located a single case that holds that when family members borrow money together or when one family member guarantees another family member's debt that that creates a fiduciary relationship. It just doesn't. And so of course we agree that there can be ad hoc fiduciary relationships that arise in certain circumstances. But it is absolutely clear that this is not one of those circumstances under New York law. And the reason this – so there's two reasons this matters. One is – Your time is about expired. You have 20 seconds. And two, it's the only reason Mrs. DeLuca is in this case at all. I don't believe she should have been joined in this case. And I think it is clear there was no fiduciary relationship and that there was therefore no fiduciary relationship for her to aid and abet the breach of. And I just ask your honors to consider, you know, how could it possibly be? Have your argument. Every family member. Sure. We have your argument. Thank you. Thank you. Thank you both for your arguments. Well argued. Well, the court will reserve this.